UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Cristina Maria Rodriguez, | Case No. 26-cv-1391 (ECT/LIB) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Sean P. Murphy; City of Crookston; Crookston Police Department; Polk County, Minnesota; and Northwest Regional Corrections Center, | |
| Defendants. | |

Pro se Plaintiff Cristina Maria Rodriguez filed a Complaint [ECF No. 1] and an Application to Proceed *In Forma Pauperis* ("IFP Application") [ECF No. 2]. The Complaint will be dismissed, and the IFP Application will be denied as moot.

I

Rodriguez resides in Polk County, Minnesota, in the City of Crookston. *See* Compl. ¶ 1. In the Complaint, Rodriquez names five defendants. Rodriguez identifies Sean P. Murphy as an officer with the Crookston Police Department ("CPD") and sues him in both his individual and official capacities. *Id.* at 3. Rodriguez names the City of Crookston and the CPD separately. *Id.* at 3–4. And Rodriguez names Polk County and the Northwest Regional Corrections Center ("NWRCC"), which she identifies as a "[r]egional correctional facility/governmental authority" located in Crookston. *Id.* at 4.

The Complaint's factual narrative begins with events in Crookston around August 16, 2025. Rodriguez alleges that on this date, Murphy "stopped, seized, and detained" her

"without lawful probable cause or reasonable suspicion." *Id.* ¶ 7.  She alleges she was thus "unlawfully deprived of her liberty." *Id.*  During the stop, Rodriguez alleges, Murphy "unlawfully prolonged" her detention and "misrepresented or disregarded objective medical symptoms as evidence of criminal impairment, despite the absence of lawful indicators justifying arrest." *Id.* ¶ 8.  She claims this caused "fear, humiliation, and emotional distress." *Id.*  She further alleges that Murphy arrested her "based on unsupported conclusions rather than articulable facts," leading to her "unlawful arrest and exposure to criminal charges that would not have occurred absent the constitutional violations." *Id.* ¶ 9.

The Complaint does not identify what criminal charges were filed, whether any criminal case is pending, or the outcome of any such charges.  But the Civil Cover Sheet Rodriguez submitted with the Complaint points to a pending state-court case: *State v. Rodriguez*, No. 60-CR-25-1306 (Minn. Dist. Ct.).  That case's docket shows Rodriguez was charged with two crimes arising from the relevant arrest, including third-degree controlled-substance crime and third-degree driving while impaired.  *See* Register of Actions, *State v. Rodriguez*, No. 60-CR-25-1306 (Minn. Dist. Ct.); *see also*, Compl. at 3, *State v. Rodriguez*, No. 60-CR-25-1306 (Minn. Dist. Ct. Aug. 18, 2025) (indicating relevant arrest was on August 16, 2025).[1]  On March 26, 2026, an amended complaint was filed in the state-court case which added a charge of fifth-degree possession of a controlled

---

[1]    A court can take judicial notice of public state-court records. *See, e.g.*, *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (citing *United States v. Eagleboy*, 200 F.3d 1137, 1140 (8th Cir. 1999)).

substance, Am. Compl. at 2, *State v. Rodriguez*, No. 60-CR-25-1306 (Minn. Dist. Ct. Mar. 26, 2026), and the third-degree controlled-substance charge was dismissed, Court Clerk Minutes, *State v. Rodriguez*, No. 60-CR-25-1306 (Minn. Dist. Ct. Mar. 26, 2026).

After her arrest, Rodriguez alleges she was detained at the NWRCC. Compl. ¶ 13. She alleges that while there she "exhibit[ed] serious medical symptoms, including dangerously elevated blood pressure." *Id.* She asked for "medical assistance," but alleges that Defendants' response showed "deliberate indifference to [Rodriguez's] serious medical needs, causing physical pain, emotional distress, and an increased risk to [her] health and safety." *Id.* ¶ 14.[2]

Regarding Polk County, Rodriguez alleges that "its involvement in post-arrest detention, processing," and oversight allowed her to be "unlawfully detained and processed following an unconstitutional arrest." *Id.* ¶ 12.[3] Rodriguez alleges the City of Crookston "through its police department, maintained and enforced policies, customs, or practices that permitted unlawful stops, arrests, and the misclassification of medical conditions as criminal conduct," and "failed to adequately supervise, investigate, or correct such conduct." *Id.* ¶ 10. Similarly, she alleges the CPD allegedly "failed to properly train and supervise its officers . . . regarding constitutional limits on seizures, the assessment of

---

[2]    The Complaint does not identify which correctional officers, medical staff, or administrators at NWRCC received Rodriguez's requests for help or were responsible for the alleged denial of care.

[3]    Again, the Complaint does not state which employees were involved, what actions they took, what policies they followed, or what specific "oversight responsibilities," Compl. ¶ 12, are at issue.

medical conditions during enforcement encounters, and the obligation to protect individuals' constitutional rights." *Id.* ¶ 11.

The Complaint contains no formal list of claims. Construed liberally, it identifies the following potential causes of action:

(1)     A claim under 42 U.S.C. § 1983 for unreasonable seizure, unlawful traffic stop, and false arrest (in violation of the Fourth Amendment) against Murphy in his individual and official capacities.

(2)     A § 1983 claim for deliberate indifference to serious medical needs (in violation of the Fourteenth Amendment's Due Process Clause) against NWRCC and Polk County.

(3)     Claims under § 1983 for *Monell*[4] municipal liability (based on an unconstitutional policy, custom, or failure to train or supervise) against the City of Crookston, the CPD, and Polk County.

(4)     Claims under Title II of the Americans with Disabilities Act ("ADA"), as well as the Rehabilitation Act, for alleged discriminatory misclassification of medical symptoms during Rodriguez's arrest.

(5)     A request for equitable, declaratory, and injunctive relief addressing the allegedly unconstitutional application of state criminal park-zone enhancements.[5] This claim would presumably proceed against the City of Crookston and the CPD.

Rodriguez seeks several forms of relief. She seeks a declaratory judgment that Defendants violated her constitutional and federal-law rights. *See id.* at 8. She also seeks compensatory and punitive damages. *See id.* And, as noted, she seeks declaratory and

---

[4]     *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978).

[5]     Rodriguez presumably seeks relief addressing the application of state criminal park-zone enhancements because her charge for third-degree controlled-substance crime is under Minn. Stat. § 152.023, subd. 2(a)(6). Under this subdivision, possessing any amount of methamphetamine or amphetamine in certain areas (including, as relevant here, a "park zone") is a third-degree controlled-substance crime.

4

injunctive relief requiring the City of Crookston and the CPD to stop "applying park-zone criminal enhancements unless [a] location has been lawfully designated as a park by ordinance or resolution." *Id.*

II

Rather than pay this action's filing fee, Rodriguez submitted the IFP Application. That filing suggests that as a financial matter, Rodriguez might qualify for *in forma pauperis* ("IFP") status. But under the federal statute governing IFP proceedings, "the court shall dismiss [an IFP proceeding] at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ." 28 U.S.C. § 1915(e)(2). When deciding whether a complaint states a claim, a court accepts the complaint's factual allegations as true and permits the plaintiff every reasonable inference. *See, e.g.*, *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). A complaint need not include exhaustive detail, but it must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must also "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Courts read *pro se* complaints like Rodriguez's generously, but even these pleadings must allege enough facts to support each claim. *See, e.g.*, *Sandknop v. Mo. Dep't of Corrs.*, 932 F.3d 739, 741–42 (8th Cir. 2019) (citing *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

Two parties must be dismissed because they are not suable. Under Eighth Circuit precedent, city police departments are not suable legal entities; they are subdivisions of the city. *E.g.*, *Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992); *Edner v.*

5

*Redwood Cnty. Dist. Att'y's Off.*, No. 19-cv-2486 (SRN/LIB), 2025 WL 2408667, at \*10 (D. Minn. Aug. 20, 2025) (citing cases, including *Ketchum*).   Because Rodriguez has already named the City of Crookston as a defendant, any claims against the CPD should be directed at the City.   Second, county jails and correctional facilities are not suable legal entities under § 1983; they are buildings or subdivisions of a governmental entity.   *See, e.g.*, *De La Garza v. Kandiyohi Cnty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (per curiam); *Washington v. Anoka Cnty. Jail*, No. 10-cv-4938 (JRT/FLN), 2012 WL 1886482, at \*3 (D. Minn. May 2, 2012) (citing cases, including *De La Garza*), *R. & R. adopted*, 2012 WL 1886479 (D. Minn. May 23, 2012).   The NWRCC is a regional correctional facility serving multiple counties.   However it is overseen (whether by Polk County, a joint-powers entity under Minn. Stat. § 471.59, or otherwise), Rodriguez cannot sue the NWRCC itself.   The proper defendants for claims arising from her NWRCC detention are the governmental entities that operate and control the facility, and any individuals alleged to have personally violated her rights.

The official-capacity claim against Murphy will be dismissed because it is duplicative of the claim against the City of Crookston.   It is well established that "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"   *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell*, 436 U.S. at 690 n.55); *accord Sorcan v. Rock Ridge Sch. Dist.*, 131 F.4th 646, 650–51 (8th Cir. 2025) (quoting *Graham*).   The Eighth Circuit routinely dismisses official-capacity claims as redundant when the employing governmental entity is also a named defendant.   *See, e.g.*, *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th

Cir. 2010) (citing *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1182 (8th Cir. 1998)); *see also, e.g.*, *Butcher v. Martin*, No. 1:23-cv-1077, 2025 WL 866866, at *11 (W.D. Ark. Jan. 23, 2025) (citing *Veatch*), *R. & R. adopted*, 2025 WL 864287 (W.D. Ark. Mar. 19, 2025).  Because the City of Crookston is already a named defendant, the official-capacity claims against Murphy are duplicative.

Rodriguez's individual-capacity Fourth Amendment claims against Murphy are not plausibly alleged.  Section 1983 provides a cause of action against any "person" who, acting under color of state law, deprives another of rights secured by the Constitution or laws of the United States.  *See* 42 U.S.C. § 1983.  The Fourth Amendment protects citizens against "unreasonable searches and seizures."

A traffic stop is a "seizure" for Fourth Amendment purposes.  *E.g.*, *Whren v. United States*, 517 U.S. 806, 809–10 (1996) (collecting cases); *United States v. Johnson*, 166 F.4th 1116, 1118 (8th Cir. 2026) (citing *United States v. Soderman*, 983 F.3d 369, 374 (8th Cir. 2020)).  An officer may conduct a brief investigative stop upon reasonable suspicion based on "specific and articulable facts" that criminal activity is occurring.  *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *accord United States v. McMillion*, 101 F.4th 573, 576 (8th Cir. 2024) (quoting *United States v. Quinn*, 812 F.3d 694, 697 (8th Cir. 2016)).  Courts assess reasonable suspicion from the "totality of the circumstances" known to the officer at the time.  *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)); *see also, e.g.*, *Valdivia v. Porsch*, 163 F.4th 1121, 1125 (8th Cir. 2026) (citing *United States v. Lemons*, 84 F.4th 766, 769 (8th Cir. 2023)).  Without added reasonable suspicion, an officer cannot extend a stop beyond the time reasonably

required to handle the issue justifying it.  *See, e.g.*, *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015); *United States v. Hamber*, 127 F.4th 1083, 1086 (8th Cir. 2025).

Rodriguez also complains about her arrest.  "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *accord Valdivia*, 163 F.4th at 1126 (quoting *Stewart v. Garcia*, 139 F.4th 698, 705 (8th Cir. 2025)).  Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)); *see also, e.g.*, *United States v. Britton*, 101 F.4th 538, 542 (8th Cir. 2024) (quoting *United States v. Winarske*, 715 F.3d 1063, 1067 (8th Cir. 2013)).

Rodriguez alleges that Murphy "stopped, seized, and detained" her "without lawful probable cause or reasonable suspicion," that he "unlawfully prolonged" her detention and "misrepresented or disregarded objective medical symptoms as evidence of criminal impairment, despite the absence of lawful indicators justifying arrest," and that he "initiat[ed] and carr[ied] out an arrest based on unsupported conclusions rather than articulable facts."  Compl. ¶¶ 7–9.

These allegations, construed liberally, do not state a plausible Fourth Amendment claim.  The Complaint names a specific officer, an approximate date, and a general location, but the facts end there.  The Complaint contains no description of the stop-and-arrest circumstances from which unconstitutional conduct could reasonably be inferred.  For instance, the Complaint does not allege what prompted the stop—whether Murphy

observed a traffic violation, erratic driving, or nothing at all. Rodriguez does not describe what Murphy said or did during the stop, how long it lasted, what he did to allegedly "prolong" the detention, or how she responded. And while the Complaint alleges that Murphy "misrepresented or disregarded" certain "medical symptoms," it does not identify those symptoms, describe Rodriguez's medical condition, state what Murphy claimed to observe, or explain how his observations differed from Rodriguez's actual condition. All we have are legal conclusions that the stop lacked reasonable suspicion and that the arrest lacked probable cause. These are precisely the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that *Iqbal* holds insufficient to survive threshold review. 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). I cannot plausibly infer that Rodriguez's seizure and arrest were unreasonable under the Fourth Amendment.

Because Rodriguez was a pretrial detainee at NWRCC, her right to adequate medical care while there arises under the Fourteenth Amendment's Due Process Clause. *See, e.g.*, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *Hall v. Higgins*, 77 F.4th 1171, 1178 (8th Cir. 2023). Pleading such a claim requires a two-part showing.[6] The objective prong requires a "serious medical need," meaning one "'diagnosed by a physician as mandating treatment' or . . . 'so obvious that even a layperson would easily

---

[6]   The Eighth Circuit has noted that a pretrial detainee's Fourteenth Amendment rights are "at least as great" as a convicted prisoner's Eighth Amendment protections. *See, e.g.*, *Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902, 906 (8th Cir. 1999) (quoting *City of Revere*, 463 U.S. at 244). In practice, the Eighth Circuit applies the same substantive standard to pretrial detainees' medical-care claims as to prisoners' Eighth Amendment claims. *See, e.g.*, *Troupe v. Young*, 143 F.4th 955, 968 (8th Cir. 2025).

recognize the necessity for a doctor's attention.'" *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)). The subjective prong requires that the defendant knew of "a substantial risk of serious harm" and deliberately disregarded it. *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *accord Stamps v. United States*, No. 23-cv-3014 (PAM/JFD), 2023 WL 12099241, at *5 (D. Minn. Dec. 7, 2023) (quoting *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006)), *R. & R. adopted*, 2024 WL 6047110 (D. Minn. Jan. 9, 2024). Section 1983 also requires each defendant's personal involvement in the alleged violation; *respondeat superior* liability does not apply. *See, e.g.*, *Iqbal*, 556 U.S. at 676 (citing cases); *Hall*, 77 F.4th at 1178 (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013)).

Rodriguez alleges she suffered "dangerously elevated blood pressure" and a "deteriorating condition" while in custody, requested medical assistance, and experienced "delay, denial, or inadequate response." Compl. ¶¶ 13–14. Assuming this alleges a serious medical need, the Complaint names no individual NWRCC staff member as a defendant. Because Rodriguez does not identify any specific defendant as having received and disregarded her requests for help, I cannot evaluate whether any defendant had a sufficiently culpable state of mind. The only potential defendants bearing on this claim— the NWRCC (not a suable entity) and Polk County—are therefore subject to the *Monell* requirements discussed below.

As noted, a municipality may not be held liable under § 1983 on a *respondeat superior* theory; it must instead be the "moving force" behind the constitutional violation.

10

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997); *accord Watkins v. City of St. Louis*, 102 F.4th 947, 953 (8th Cir. 2024) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)).  A threshold requirement is an underlying constitutional violation; without one, *Monell* liability cannot exist.  *See, e.g.*, *Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018); *Loyd v. Schmitt*, No. 24-cv-1391 (LMP/JFD), 2026 WL 446427, at *8 (D. Minn. Feb. 17, 2026) (quoting *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007)).

The Eighth Circuit recognizes three avenues for *Monell* liability: "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."  *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016) (citation modified); *accord Toomey v. Dakota County*, No. 25-cv-1214 (LMP/ECW), 2025 WL 2267677, at *2 (D. Minn. Aug. 8, 2025) (quoting *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016)).  Pleading an unofficial custom requires alleging "a continuing, widespread, persistent pattern of unconstitutional misconduct."  *Corwin*, 829 F.3d at 700 (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)).  An isolated incident generally cannot establish a custom.  *See, e.g.*, *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991)); *VanHauer v. Minneapolis Police Dep't*, No. 23-cv-1208 (ECT/LIB), 2024 WL 3540799, at *6 (D. Minn. July 25, 2024) (quoting *Ulrich*), *aff'd*, No. 24-2582, 2024 WL 5400262 (8th Cir. Oct. 4, 2024).  A failure-to-train claim requires that the training deficiency "amount[s] to 'deliberate indifference' to the rights of persons with whom the [employees] come into contact."  *Collins v. City of Harker Heights*, 503 U.S. 115, 123–24

11

(1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)); *accord Ulrich*, 715 F.3d at 1061 (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)).  "[A] *pattern* of similar constitutional violations by untrained employees is ordinarily necessary" to show such deliberate indifference.  *Gherity v. Pfaff*, 216 F. Supp. 3d 975, 980 (D. Minn. 2016) (emphasis in original) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)); *see also, e.g.*, *VanHauer*, 2024 WL 3540799, at *5 (quoting *Connick*).[7]

Rodriguez alleges that the City of Crookston, "through its police department, maintained and enforced policies, customs, or practices that permitted unlawful stops, arrests, and the misclassification of medical conditions as criminal conduct," and "failed to adequately supervise, investigate, or correct such conduct."  Compl. ¶ 10.  The department is alleged to have "failed to properly train and supervise its officers . . . regarding constitutional limits on seizures [and] the assessment of medical conditions during enforcement encounters," and that this failure "was a moving force behind [Rodriguez's] injuries."  *Id.* ¶ 11.

Rodriguez asserts that unconstitutional policies and training failures exist but pleads no facts to support them.  Her August 2025 arrest alone cannot establish a municipal custom or policy.  She has not identified any prior similar constitutional violations, specific policy directive, flaw in training, or pattern of unconstitutional conduct.  Her allegations, then, are just threadbare recitals of the *Monell* elements.  The *Monell* claim against the City of

---

[7]    A narrow single-incident exception applies only where "the unconstitutional consequences of failing to train" are "patently obvious" (e.g., arming officers without training them on the use of deadly force).  *Connick*, 563 U.S. at 63–64 (discussing earlier Supreme Court cases).

Crookston will be dismissed.  As for Polk County, Rodriguez alleges that "its involvement in [her] post-arrest detention [and] processing" allowed her "to be unlawfully detained and processed" after the arrest.  Compl. ¶ 12.  This is at best an attempt to impose vicarious liability because Rodriguez was placed in a facility within the County's jurisdiction after a city officer arrested her.  But Rodriguez has not identified any specific policy, custom, or failure to train by the County that was the "moving force" behind her alleged injury.  The Complaint thus fails to plead essential *Monell* elements as to Polk County.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The Rehabilitation Act provides substantially identical protections for programs receiving federal financial assistance.  *See* 29 U.S.C. § 794(a).  "Since the ADA and the Rehabilitation Act are similar in substance," courts "treat the case law interpreting them as interchangeable."  *Argenyi v. Creighton Univ.*, 703 F.3d 441, 448 (8th Cir. 2013) (citation modified); *accord Murphy ex rel. Murphy v. Minn. Dep't of Hum. Servs.*, 260 F. Supp. 3d 1084, 1114 (D. Minn. 2017).

To state a Title II claim, a plaintiff must plead facts showing she is a "qualified individual with a disability"; that she was denied participation in or the benefits of a public entity's services, programs, or activities, "or was otherwise subjected to discrimination by the public entity"; and that the denial or discrimination was "by reason of" the disability.  *Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020) (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010)).  For Title II purposes, a "disability" means

"a physical or mental impairment that substantially limits one or more major life activities," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

The Eighth Circuit has indicated that a police department's arrest of a suspect can be an ADA "program or activity." *See Roberts v. City of Omaha*, 723 F.3d 966, 973 (8th Cir. 2013) ("[Plaintiff] is correct in noting the ADA and the Rehabilitation Act apply to law enforcement officers taking disabled suspects into custody."). But individuals cannot be sued in their individual capacities under Title II; only the relevant public entity is a proper defendant. *See, e.g.*, *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc). Any ADA claim based on the arrest thus cannot target Murphy; it would at most target the City of Crookston.

Rodriguez invokes the ADA and Rehabilitation Act in the Complaint's jurisdictional section. *See* Compl. at 5. Her factual narrative alleges that Murphy "misinterpreted or disregarded objective medical symptoms as evidence of criminal impairment." *Id.* ¶ 8. To state a Title II claim, Rodriguez must plead facts showing she is a "qualified individual with a disability." *Rinehart*, 964 F.3d at 688 (quoting *Baribeau*, 596 F.3d at 484). She alleges only that "objective medical symptoms" existed during the encounter. Compl. ¶ 8. She does not identify any specific physical or mental impairment that would qualify as a disability under the ADA.[8] Without a qualifying disability, I cannot infer that Rodriguez

---

[8]    Later in the narrative, Rodriguez points to "dangerously elevated blood pressure" while at the NWRCC. Compl. ¶ 13. Assuming this condition existed at the time of the arrest, I cannot conclude that elevated blood pressure constitutes an ADA disability without allegations describing the impairment and how it limits Rodriguez's life activities.

14

is a qualified individual or that she was discriminated against because of that disability. The Complaint's ADA and Rehabilitation Act claims will be dismissed for failure to state a claim.

Rodriguez seeks prospective injunctive and declaratory relief requiring the City of Crookston and its police department to stop applying "park-zone criminal enhancements unless the location has been lawfully designated as a park by ordinance or resolution." Compl. at 8. It is difficult to understand why Rodriguez might have standing to seek forward-looking relief because Rodriguez does not allege facts showing that she faces an ongoing injury or a "real and immediate" threat of future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–05, 107 n.8 (1983). The Complaint contains no factual allegations to support this claim. The Complaint does not indicate where Rodriguez was located at the time of her arrest, or why any relevant location bearing on Rodriguez's charges should not qualify as a park zone.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.     Plaintiff Cristina Maria Rodriguez's Complaint [ECF No. 1] is **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. § 1915(e)(2).

2.     Rodriguez's Application to Proceed *In Forma Pauperis* [ECF No. 2] is **DENIED AS MOOT**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  April 15, 2026                    s/ Eric C. Tostrud                          
                                          Eric C. Tostrud
                                          United States District Court

16